## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KIMBERLY ROSS**  CIVIL ACTION

**VERSUS**

NO. 20-629-JWD-RLB

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL SECURITY**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 17, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIMBERLY ROSS** | **CIVIL ACTION** |
| **VERSUS** | |
| **ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY** | **NO. 20-629-JWD-RLB** |

## REPORT AND RECOMMENDATION

Kimberly Ross (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g).[1] (R. Doc. 1). Having found all the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").

Although instructed that it was unnecessary (R. Doc. 3 at 2), Plaintiff filed a separate Motion for Summary Judgment (R. Doc. 11) with the memorandum in support of appeal. For the reasons given below, the Court **RECOMMENDS** that the Motion for Summary Judgment (R. Doc. 11) be **DENIED**, the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, Kilolo Kijakazi is automatically substituted for Andrew M. Saul as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

2

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on June 25, 2018, in which she alleges that she became disabled on August 1, 2016.[2] (Tr. 168). Plaintiff's alleged disabling conditions include a tethered spinal cord, spinal bifida, diastematomyelia, disturbed sleep, heightened anxiety, cognitive impairment, incontinence, back pain, leg pain, leg weakness, chronic fatigue, and numbness and tingling in extremities. (Tr. 200). Plaintiff's applications for benefits were initially denied by the Social Security Administration on September 27, 2018. (Tr. 103, 109). Thereafter, Plaintiff filed a written request for a hearing on October 31, 2018. (*See* 165). An Administrative Law Judge ("ALJ") held a hearing on September 25, 2019, (Tr. 35-93), after which he issued an unfavorable decision on October 17, 2019. (Tr. 18-29). Plaintiff subsequently filed a Motion to Reconsider, which was denied by the ALJ on December 16, 2019. (Tr. 14-17).

The ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act") through December 31, 2017, the last date Plaintiff was insured. (Tr. 29). The medical evidence established that Plaintiff suffers from severe back disorders, which includes a tethered spinal cord and diastematomyelia. (Tr. 24). Plaintiff's severe impairments, however, do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix. (Tr. 25).

After considering the entire record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). (Tr. 25). At the hearing, the vocational expert testified that Plaintiff's past relevant work ("PRW") as a women's apparel and accessory salesperson is

---

[2] Plaintiff amended her alleged onset date to beginning on August 29, 2016. (Tr. 183).

categorized as light, while her other PRW as a receptionist appointment clerk, and policyholder information clerk are categorized as sedentary work. (Tr. 29, 82). Therefore, the ALJ held that Plaintiff's RFC does not preclude her from performing her PRW. (Tr. 29, 83). Accordingly, the ALJ concluded that Plaintiff is able to engage in substantial gainful activity, and is therefore, not disabled.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 20, 2020. (Tr. 1-7). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan,* 895 F.2d at 1022. The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (internal quotations omitted). The Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.   ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act ("SSA"). *Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir.1986) (internal citations omitted). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017.

2. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of August 29, 2016 through her date last insured of December 31, 2017. 20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*

3. Through the date last insured, Plaintiff had the following severe impairment: disorders of the back (tethered spinal cord and diastematomyelia). 20 C.F.R. § 404.1520(c).

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d), 404.1525 and 404.1526.

5. After careful consideration of the entire record, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

6. Through the date last insured, Plaintiff was capable of performing PRW as a composite job of women's apparel and accessory salesperson, receptionist, and appointment clerk, and a policyholder information clerk. This work did not require the performance of work-related activities precluded by Plaintiff's RFC. 20 C.F.R. § 404.1565.

7. Plaintiff was not under a disability, as defined the Social Security Act, at any time from August 29, 2016, the alleged onset date, through December 31, 2017, te date last insured. 20 C.F.R. § 404.1520(f).

## IV. DISCUSSION

Plaintiff advances three arguments in support of her request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. First, Plaintiff

avers that remand is required because the Commissioner denied Plaintiff due process at the initial level under 20 C.F.R. § 404.902. (R. Doc. 11-1 at 7). Second, the ALJ failed to follow a proper legal standard and committed reversible error by conducting no analysis of Plaintiff's lumbar, thoracic, or cervical pathology at step two of the analysis. (R. Doc. 11-1 at 7). Third, the ALJ failed to follow a proper legal standard, committed reversible error, and abused his discretion by misrepresenting the opinions/conclusions of Plaintiff's physicians, her treatment, and statements to her doctors. (R. Doc. 11-1 at 7).

### A. The Commissioner did not violate Plaintiff's right to due process

In her first assignment of error, Plaintiff alleges that the Commissioner denied her the right to due process by failing to base the initial determination on the preponderance of the evidence and failing to state important facts and reasons for the conclusion as required by 20 C.F.R. § 404.902. Instead, the Disability Determination Services' medical consultant ("DDS MC") ignored relevant evidence, including Plaintiff's records prior to the date of last insured, and chose to rely on irrelevant evidence. (R. Doc. 11-1 at 9-10). As a result of the DDS MC's inadequate review, Plaintiff moved (at the hearing before the ALJ) for medical expert testimony and interrogatories, but she was deprived of the opportunity to have a medical consultant analyze the evidence. (R. Doc. 11-1 at 10). Accordingly, Plaintiff was denied due process.

Plaintiff fails to allege a colorable violation of due process claim. Due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied. *Matthews v. Eldridge,* 424 U.S. 319, 333 (1976). The Social Security Act's (the "Act") multi-stage administrative process is designed to provide claimants with adequate notice and a full and fair hearing. This process consists of the initial determination

7

regarding entitlement to benefits, reconsideration of that determination, a hearing before an ALJ, and review by the Appeals Council of the ALJ's decision. 20 C.F.R. § 404.900.

Plaintiff's first due process violation allegedly occurred during the initial determination. Section 404.902 of the Act sets forth the administrative actions considered by Congress to be initial determinations subject to administrative and judicial review. Plaintiff essentially argues that, instead of basing its decision on the preponderance of the evidence, the DDS MC ignored relevant evidence (that would support the granting of benefits) and cherry-picked records that support a denial of benefits.

In making its determination, the DDS MC provided that the medical evidence submitted by Plaintiff was insufficient to show that she is disabled. (Tr. 103). The DDS MC analyzed the reports from the following medical sources: (1) Timothy Bella, MD (2) LA Urology, and (3) Woman's Hospital. (Tr. 97-99). The DDS MC contends that he requested that Plaintiff furnish additional evidence to support her claim, but she failed to do so. (Tr. 103). Conversely, Plaintiff argues that she, indeed, submitted over 200 pages of medical records, as a well as a detailed function report, that the DDS ignored. (R. Doc. 11-1 at 2).

After receiving a Notice of Disapproved Claim, (Tr. 109-12), Plaintiff filed a written request for a hearing before an ALJ to appeal the initial determination. (Tr. 165-67). The ALJ held a hearing, which Plaintiff and her counsel of record attended, and the ALJ issued an unfavorable decision. (Tr. 18-29). At the hearing, the ALJ explained that there was "a ton of evidence" that the DDS MC ignored and that the DDS MC "dropped the ball on [the] assessment." (Tr. 42). Nevertheless, the ALJ informed Plaintiff that he would be making "a new determination, meaning [he was] not bound by the prior decision [of the DDS MC] in this matter." (Tr. 28). Additionally, in his written notice, the ALJ explained that he does "not defer or

8

give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions," including that of the DDS MC. (Tr. 28).

After fully considering the medical opinions and prior administrative findings—including the evidence that Plaintiff claims the DDS MC ignored—the ALJ concluded that the opinion of the DDS MC "is unpersuasive if considered an opinion at all." (Tr. 28). Accordingly, the actions of the DDS MC had no bearing on the decision of the ALJ.

The Court, therefore, finds that Plaintiff was not prejudiced by the actions of the DDS MC. Moreover, Plaintiff took full advantage of the administrative claims process, was provided a hearing before the ALJ, and exercised her right to appeal. *See Cornett v. Astrue,* 261 F. App'x. 644, 651 (5th Cir. 2008). The ALJ's ultimate *de novo* review and findings, and the Appeals Council's affirmation of those findings, adequately resolved the subordinate actions of the DDS MC.

Plaintiff, however, also argues that the ALJ violated her right to due process by denying her motion for medical expert testimony and interrogatories. ALJs have complete discretion over the calling of medical experts. *Dominguez v. Astrue,* 286 F. App'x 182, 186 (5th Cir. 2008). The "ALJ may exercise discretion and request one *if* [he] cannot obtain the information needed from a claimant's medical sources or from the existing medical evidence, or *if* there is an unresolvable inconsistency in the evidence or an insufficiency of evidence that prohibits a determination of the claims." *Lewis v. Commissioner of Social Security,* No. 20-345-EWD, 2021 WL 4142279, *8 (M.D. La. Sept. 10, 2021) (emphasis in original).

Here, the ALJ explained that medical expert testimony was not necessary given the length of time that elapsed since the date Plaintiff was last insured. (Tr. 92). He further stated that he has more than sufficient evidence to decide on Plaintiff's disability status. (Tr. 92). Because "the ALJ was able to assess Plaintiff's RFC considering her impairments based on the

9

existing medical evidence and Plaintiff's testimony, it was not error for the ALJ to decline to exercise discretion to obtain" a medical expert. *Id.*

>   **B.    The ALJ properly found that Plaintiff did not have a severe lumbar, thoracic, or cervical impairments**

In her second assignment of error, Plaintiff alleges that the ALJ failed to conduct an analysis of the severity of Plaintiff's lumbar, thoracic, and cervical impairments. (R. Doc. 11-1 at 11). In so arguing, Plaintiff points to MRIs of her (1) lumbar spine, which shows that she as severe stenosis at L5-S1 with compression of the exiting L5 nerve root; (2) thoracic spine, which reveals a segmentation anomaly at T5-6 with kyphoscoliosis and abnormal appearance of the cord in the mid spine; and (3) cervical spine, which shows mild spondylitic findings at C4-5 and C5-6 with mild ventral cord flattening. (R. Doc. 11-1 at 11) (citing Tr. 338, 358, 351, 353, 354, and 375). Plaintiff argues that her lumbar, thoracic, and cervical injuries are separate impairments in addition to her tethered spinal cord and diastematomyelia. Accordingly, the ALJ should have considered the severity of same.

In response, Defendant suggests that all of Plaintiff's back injuries, including any lumbar, thoracic, or cervical injuries, are encapsulated in the ALJ's step two findings, where the ALJ found that Plaintiff suffers serve "disorders of the back (tethered spinal cord[3] and

---

[3] Tethered cord syndrome is a rare neurological condition, the severity of which varies from person to person. Symptoms may be apparent at birth or may not produce symptoms until later in life. The condition may result in foot and spinal abnormalities, weakness of the legs, loss of feeling in the lower extremities, *lower back pain, scoliosis* and urinary incontinence. Tethered cord syndrome occurs when tissue attachments limit the movement of the spinal cord within the spinal column. The syndrome may result from improper growth of the neural tube during fetal development, which is closely linked to spina bifida. Other potential causes including narrowing of the spinal column with age, spinal cord injury, tumors and infection. Treatment varies based on the signs and symptoms present in the particular patient and the severity of the condition but may include surgery and medications to manage pain. www.rarediseases.info.nih.gov/diseases/4018/tethered-cord-syndrome (accessed February 13, 2022) (emphasis added).

10

diastematomyelia[4]).” (R. Doc. 15 at 6). *Randall v. Astrue,* 570 F.3d 651, 657-58 (5th Cir. 2009) ("the Act and the regulations 'separate the question of the impairment's existence from the question of its severity'"). Defendant further asserts that "by merely pointing to diagnostic tests regarding her back—despite the ALJ having already found that Plaintiff had severe 'disorders of the back'—Plaintiff fails to meet her burden to show she had additional severe back impairments." (R. Doc. 15 at 7).

A "physical or mental impairment" is "an impairment that results from an anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Hames v. Heckler,* 707 F.2d 162, 165 (5th Cir. 1983). "Slight abnormalities" that have "such a minimal effect in the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience" are not considered severe. *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985).

Here, substantial evidence supports the ALJ's conclusion that Plaintiff's lumbar, thoracic, and cervical spinal pain are symptoms of Plaintiff's tethered cord syndrome and diastematomyelia. Indeed, the laboratory diagnostic techniques of Plaintiff's physicians reveal the same.

On July 20, 2017, Dr. Angele Bourg ordered an MRI on Plaintiff's lumbar spine. (Tr. 467). The MRI reveals that Plaintiff has "diastematomyelia with 2 separate neural tubes along with tethered cord syndrome." (Tr. 338, 467). It further shows that Plaintiff "has severe left foraminal stenosis" which "could affect the left L5 nerve." (Tr. 467).

On August 23, 2017, Plaintiff visited Dr. Gregory Fautheree and complained of chronic neck, thoracic, and lumbar pain. (Tr. 355). Dr. Fautheree ordered an MRI on Plaintiff's thoracic

---

[4] Diastematomyelia is complete or incomplete sagittal division of the spinal cord by osseous or fibrocartilaginous septum.

11

and cervical spine and referred Plaintiff to Dr. Benjamin Kidder. (Tr. 338, 355). Dr. Kidder explained that Plaintiff's cervical spine MRI reveals "no cord compression," but shows that Plaintiff has some spondylosis. (Tr. 338). The MRI of Plaintiff's thoracic spine reveals "similar findings." (Tr. 338). Importantly, Dr. Kidder opined that Plaintiff's chronic pain history is likely caused by her tethered cord and diastematomyelia. (Tr. 343).

Plaintiff received a second opinion on her lower back (lumbar) pain from Dr. Scott Soleau on November 1, 2017. (Tr. 331). Dr. Soleau explained that "there is severe stenosis of the left L5-S1 foramen causing severe compression of the exiting L5 nerve root, however [Plaintiff] is not really describing neuropathic symptoms in an L5 distribution." (Tr. 334). Accordingly, Dr. Soleau opined that Plaintiff's "symptoms are coming from the tethered cord." (Tr. 334). Simply put, Plaintiff's lumbar pain is not caused by her severe stenosis (as Plaintiff alleges), but it is instead a symptom of tethered cord syndrome.

Considering the foregoing, the Court finds that the object evidence, particularly the opinions of Dr. Kidder and Dr. Soleau, substantially support the ALJ's conclusion that Plaintiff's lumbar, thoracic, and cervical spine pain are symptoms of and encapsulated in her tethered cord syndrome and diastematomyelia impairments. As such, Plaintiff's lumbar, thoracic, and cervical spine pain are not independent, clinically found impairments. The ALJ, therefore, did not commit reversible error by declining to make a disability determination with respect to Plaintiff's lumbar injuries.

Assuming, arguendo, that the ALJ erred by not separately finding at step two that Plaintiff's lumbar, thoracic, and cervical injuries were independent severe impairments, such error is harmless and is not a basis for reversal. Under the Fifth Circuit's standards, harmless "error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul,* 986 F.3d 551, 556 (5th Cir. 2021). It is further

harmless when the ALJ proceeds past step two in the sequential analysis and considers the impairments in the subsequent stages of the five-step analysis. *See Adams v. Bowen,* 833 F.2d 509, 512 (5th Cir. 1987).

Here, the ALJ progressed beyond step two in determining that Plaintiff is not disabled. In making his RFC assessment, the ALJ "considered all [of Plaintiff's] symptoms," including her lumbar, thoracic, and cervical impairments. (*See* Tr. 26-28). Particularly, the ALJ considered x-rays that "showed left thoracic and right lumbar scoliosis," degenerative disc disease "in the cervical spine, decreased cervical lordosis, and decreased disc space at L5-S1." (*See* Tr. 26-27). He further considered the physical examinations and MRIs of Plaintiff's lumbar, thoracic, and cervical spine, in conjunction with Plaintiff's statements of pain. (*See* Tr. 27).

After careful review of Plaintiff's symptoms, including her lumbar, thoracic, and cervical impairments, the ALJ found that the objective medical evidence supports a finding that Plaintiff is able to perform light work. Because Plaintiff's lumbar, thoracic, and cervical impairments were still included in the ALJ's RFC assessment, it is "inconceivable" that the ALJ would have reached a different conclusion if he had considered Plaintiff's alleged impairments at step two. Accordingly, even if the ALJ erred at step two (which he did not), such error is harmless, and remand is, therefore, not required. *See Herrera v. Comm'r of Soc. Sec.,* 406 Fed. Appx 899, 903 (5th Cir. 2010) ("[T]his case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work. Therefore, the ALJ's

failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand.").

> C. **The ALJ did not abuse his discretion by misrepresenting the opinions of Plaintiff's physicians, treatment, and statements to her doctors**

In her final assignment of error, Plaintiff contends that the ALJ committed reversible error by ignoring the medical literature that Plaintiff's counsel submitted and relying on facts taken out context—including (1) Dr. Fautheree's statements regarding Plaintiff's thoracic and cervical MRI results, (2) Dr. Jeffery Greensfield and Dr. Soleau's surgery recommendation, and (3) Plaintiff's attempts to exercise. (Tr.11-1 at 12-18).

As stated earlier, the Court may not reweigh the evidence or try the issues *de novo,* nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d at 617. The Court's review of the Commissioner's decision is limited to whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. *Anthony v. Sullivan,* 954 F.2d at 292.

Although not specified, Plaintiff's argument essentially challenges the ALJ's RFC finding—which informed the ALJ's decision that Plaintiff can perform PRW and is, therefore, not disabled. The controlling question is not whether substantial evidence supports the Plaintiff's contention that she is disabled, but instead whether substantial evidence supports the ALJ's decision that she is not. The Court finds that the ALJ's decision is, indeed, supported by substantial evidence.

Plaintiff harps on the ALJ's classification of her back disorders as "congenital" and the ALJ's alleged misrepresentation of Plaintiff's need for surgery and attempt to exercise. The

14

objective medical evidence, however, still supports the ALJ's decision notwithstanding the classification of Plaintiff's back disorders, surgery recommendation, and attempts to exercise. Particularly, the medical evidence shows that Plaintiff rates her pain as a 2/10, (Tr. 327), has a full range of motion in her lumbar and cervical spine despite tenderness, (Tr. 328, 329, 341), has a normal gait, (Tr. 328, 357), and has no numbness, tingling, or weakness in her extremities. (Tr.490). On more than one occasion, Plaintiff's physical examination of her lumbar, thoracic, and cervical spine were normal. (Tr. 349, 357). Dr. Soleau further explained that Plaintiff has full strength in all muscle groups. (Tr. 334). Additionally, on August 23, 2021, Dr. Fautheree explained that Plaintiff's back pain is bearable. (Tr. 358).

Based on this information, substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform the full range of light work. Plaintiff's PRW as a women's apparel and accessory salesperson is categorized light, and her PRW as a receptionist, appointment clerk, and policy information clerk are categorized as sedentary. Accordingly, Plaintiff is capable of performing her PRW, and is, therefore, not disabled.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Motion for Summary Judgment (R. Doc. 11) be **DENIED**, the decision of the Commissioner be **AFFIRMED,** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 17, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**